**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| OMNICARE, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 08-CV-3901 |
| ) | |
| v. ) | Hon. Matthew F. Kennelly |
| ) | |
| WALGREENS HEALTH INITIATIVES, ) | Mag. Judge Geraldine Soat Brown |
| INC., UNITED HEALTHCARE ) | |
| SERVICES, INC., and COMPREHENSIVE ) | **JURY TRIAL DEMANDED** |
| HEALTH MANAGEMENT, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**COMPREHENSIVE HEALTH MANAGEMENT, INC.'S ANSWER AND**
**AFFIRMATIVE DEFENSES TO THE AMENDED COMPLAINT**

Defendant, Comprehensive Health Management, Inc. ("CHMI"), by its attorneys, hereby

submits its Answer and Affirmative Defenses to the Amended Complaint:

**ANSWER**

**C**OUNT **I**

**(Breach of Contract To Pay Withheld Cost-sharing Amounts Against WHI)**

1.      Plaintiff Omnicare, Inc., ("Omnicare") is a corporation organized and existing
under the laws of the State of Delaware, maintaining, at all relevant times, a principal place of
business in Covington, Kentucky.  Omnicare provides pharmaceutical products and services to
residents of Long Term Care ("LTC") facilities and is reimbursed for its products and services
by healthcare insurance companies.

**ANSWER:**  CHMI lacks sufficient information or knowledge to form a belief as to the truth of

the allegations set forth in the first sentence of Paragraph 1 and, accordingly, denies them.  With

respect to the second sentence of Paragraph 1, CHMI admits that Omnicare is in the business of

providing pharmaceutical products and services to residents of long term care facilities.  CHMI

lacks sufficient information or knowledge to form a belief as to the truth of each and every

remaining allegation set forth in the second sentence of Paragraph 1 and, accordingly, denies them.

2.     Defendant Walgreens Health Initiatives, Inc. ("WHI") is a corporation organized and existing under the laws of the State of Illinois, maintaining, at all relevant times, a principal place of business in Deerfield, Lake County, Illinois.  WHI is engaged in business as a healthcare insurance company.  WHI does business in Cook County, Illinois.

**ANSWER:**  CHMI admits the allegations set forth in the first sentence of Paragraph 2.  CHMI lacks sufficient information or knowledge to form a belief as to the truth of each and every remaining allegation set forth in Paragraph 2 and, accordingly, denies them.

3.     Defendant United Healthcare Services, Inc. ("United") is a corporation organized and existing under the laws of Minnesota, maintaining, at all relevant times, a principal place of business in Minnetonka, Minnesota.  United is engaged in business as a healthcare insurance company.  Upon information and belief, United does business in Cook County, Illinois.

**ANSWER:**  CHMI admits the allegations set forth in the first sentence of Paragraph 3.  CHMI lacks sufficient information or knowledge to form a belief as to the truth of each and every remaining allegation set forth in Paragraph 3 and, accordingly, denies them.

4.     Defendant Comprehensive Health Management, Inc. ("Comprehensive") is a corporation organized and existing under the laws of Florida, maintaining, at all relevant times, a principal place of business in Tampa, Florida.  Comprehensive is engaged in business as a healthcare insurance company.  Upon information and belief, Comprehensive does business in Cook County, Illinois.

**ANSWER:**  CHMI admits that it is a corporation organized and existing under the laws of the State of Florida and that its principal place of business is in Tampa, Florida.  CHMI denies that it is healthcare insurance company.  CHMI admits that it does business in Cook County, Illinois.

5.     The Medicare Prescription Drug Improvement and Modernization Act of 2003 created a new Medicare prescription drug benefit (commonly known as "Part D"), which is administered by the Centers for Medicare and Medicaid Services ("CMS").  Under Part D, private at-risk prescription drug plans ("Part D Plans") function as payors for the prescription drug benefits of patients enrolled in the given Part D Plan.  WHI is a pharmacy benefit manager ("PBM") which processes and pays pharmacy claims on behalf of several Part D Plans.

**ANSWER:**  Admitted.

6.      To be approved by CMS, a Part D Plan must meet certain minimum requirements, such as showing it has an adequate network of pharmacies.  Part D Plans, or PBMs acting on their behalf, thus routinely contract with Omnicare to serve as an institutional pharmacy for their members.  Pursuant to these contracts, Omnicare is reimbursed by the PBM or Part D Plan for the pharmacy services it provides to their members.

**ANSWER:**  With respect to the first sentence of Paragraph 6, CHMI admits only that prescription drug benefit plans ("Part D Plans") must demonstrate a network of pharmacies, but denies each and every remaining allegation set forth in the first sentence of Paragraph 6.  CHMI lacks sufficient information or knowledge to form a belief as to the truth of each and every remaining allegation set forth in Paragraph 6 and, accordingly, denies them.

7.      Each Part D Plan has its own computerized processing system or provides a protocol to its PBM for claims processing.  The Part D Plans program these systems or design their protocols to process claims in a way that is consistent with the breadth of Part D coverage. Whenever there are changes to Part D coverage or updates from CMS regarding the treatment of certain claims, Part D Plans must update their processing systems or protocols accordingly. These instructions for handling of various classes of claims are sometimes referred to as "edits."

**ANSWER:**  CHMI lacks sufficient information or knowledge to form a belief as to the truth of the allegations set forth in the first, second and fourth sentences of Paragraph 7 and, accordingly, denies them.  CHMI denies the allegations set forth in the third sentence of Paragraph 7.

8.      Many enrollees in Part D Plans are "institutionalized full subsidy eligible individuals" under the CMS regulations for Part D.  Primarily nursing home residents, these individuals are enrolled in both a state Medicaid program and a Medicare Part D Plan.  Their dual enrollment in Medicare and Medicaid exempts them from the "cost-sharing" amounts that would otherwise be payable by beneficiaries under a Part D Plan, such as deductibles, co-payments or coinsurance amounts.  Instead, CMS provides cost-sharing subsidies to Part D Plans to cover these amounts.

**ANSWER:**  CHMI lacks sufficient information or knowledge to form a belief as to the truth of the allegations set forth in the first, second, and third sentences of Paragraph 8 and, accordingly, denies them.  CHMI denies the allegations set forth in the fourth sentence of Paragraph 8.

9.      By law, if a Part D Plan (including any PBM acting on its behalf) specifies that institutionalized full subsidy eligible individuals must pay cost-sharing when it processes their pharmacy claims, it must pay these individuals any cost-sharing that it withheld.  (*See* 42 C.F.R. 423.800(c).)    Many LTC pharmacies have not collected cost-sharing amounts from

institutionalized full subsidy eligible individuals who are residents of nursing homes and other LTC facilities. Consequently, these LTC pharmacies are left holding receivables for the services they rendered to those individuals. Recognizing the difficulty of collecting cost-sharing from patients in nursing homes and LTC facilities, CMS has directed Part D Plans to pay the specified cost-sharing amounts they withheld directly to LTC pharmacies that have not collected cost-sharing amounts from such beneficiaries and are holding receivables for those amounts.

**ANSWER:** The allegations set forth in the first sentence of Paragraph 9 constitute a legal conclusion to which no response is required; however, to the extent a response is required, CHMI denies those allegations. CHMI further denies the allegations set forth in the fourth sentence of Paragraph 9. CHMI lacks sufficient information or knowledge to form a belief as to the truth of each and every remaining allegation set forth in Paragraph 9 and, accordingly, denies them.

10. On July 29, 2005, Omnicare and WHI entered into a written contract denominated Pharmacy Network Agreement ("Agreement") by which Omnicare agreed to provide pharmaceutical products and services to members of Part D Plans and Plan Sponsors listed in Exhibit A to the Agreement. United and an affiliate of Comprehensive are among the Part D Plans and Plan Sponsors listed in Exhibit A that contracted with WHI to process and pay their claims. A copy of the Agreement has been filed under seal with this Court.

**ANSWER:** With respect to the first sentence of Paragraph 10, CHMI admits that, on or about July 29, 2005, Omnicare, Inc. ("Omnicare") and WHI entered into a written agreement entitled "Pharmacy Network Agreement" (the Agreement), but CHMI denies that, pursuant to the Agreement, Omnicare agreed to provide "pharmaceutical products and services" to CHMI or any entity affiliated with CHMI. CHMI lacks sufficient information or knowledge to form a belief as to the truth or each and every remaining allegation set forth in the first sentence of Paragraph 10 and, accordingly, denies them. With respect to the allegations set forth in the second sentence of Paragraph 10, CHMI admits that United Healthcare Services, Inc. ("United") and WellCare Health Plans, Inc. are listed on Exhibit A to the Agreement, but denies the remaining allegations set forth in that sentence. CHMI admits that a copy of the Agreement has been filed under seal

with this Court and with the Clerk of the Circuit Court of Cook County, County Department,

Law Division.

11.     In return for the provision of drugs and services, WHI agreed to pay Omnicare for prescription claims approved by WHI at the prices specified on Schedule 3.1(a) to the Agreement, and to perform its obligations under the Agreement in conformance with the Part D Rules, including "CMS instructions, and CMS published sub-regulatory guidance relating to the Part D prescription drug benefit . . ." (*See* Section 3.1(a), Section 5.1, Section 5.3, and the definition of "Part D Rules" in Article 1.)

**ANSWER:** CHMI admits that, pursuant to Section 3.1(a) of the Agreement, WHI agreed to pay

Omnicare for prescription claims submitted by Omnicare and approved by WHI, but denies each

and every remaining allegation set forth in Paragraph 11.  CHMI further refers the Court to the

Agreement for its entire terms and content.

12.     Thus WHI played two roles in this transaction: PBM and agent.  First, as a PBM, WHI is contractually bound to appropriately process claims submitted by Omnicare and remit payment to Omnicare for the claims it approves.   Second, as agent for United and Comprehensive (and the other Part D Plans and Plan Sponsors listed in Exhibit A to the contract), WHI entered into a contract on their behalf by which WHI is bound to reimburse Omnicare for the drugs and services that Omnicare agreed to provide to the Part D Plans' members.

**ANSWER:** CHMI admits only that WHI is contractually bound to process claims pursuant to its

agreement with Omnicare, and denies each and every remaining allegation set forth in Paragraph

12.

13.     During the period of January 1, 2006, through May 16, 2008, Omnicare provided prescription drugs to institutionalized full subsidy eligible beneficiaries of the Part D Plans covered by the Agreement for which WHI approved the prescription claim but withheld a cost-sharing amount.  Omnicare did not collect these cost-sharing amounts from the beneficiaries or any other source, and currently holds a receivable for these amounts.  In accordance with the terms of the Agreement and the applicable Part D Rules, WHI is obligated to pay these withheld cost-sharing amounts to Omnicare, but, despite demand, has failed to make such payments in full.

**ANSWER:** CHMI lacks sufficient information or knowledge to form a belief as to the truth of

the allegations set forth in the first and second sentences of Paragraph 13 and, accordingly,

denies them.  CHMI denies each and every remaining allegation set forth in Paragraph 13.

14.     WHI breached the Agreement by failing and refusing to pay Omnicare the withheld cost-sharing amounts.

**ANSWER:**  Denied.

15.     WHI's breaches are ongoing.

**ANSWER:**  Denied.

16.     As a result of WHI's failure to pay these cost-sharing amounts to Omnicare, for the period January 1, 2006, through May 24, 2008, WHI owes Omnicare an amount in excess of $1,643,131.21.

**ANSWER:**  Denied.

17.     Omnicare has performed all of the terms of the Agreement to be performed by it and all conditions precedent to WHI's obligation to pay Omnicare the withheld cost-sharing amounts.

**ANSWER:**  Denied.

18.     WHI's breach of the Agreement has caused Omnicare injury and damages in an amount in excess of $1,643,131.21.

**ANSWER:**  Denied.

## COUNT II

**(Breach of Contract For Failure
To Update Cost-Sharing Database Against All Defendants)**

19.     Omnicare realleges and incorporates in this Count II each of the allegations contained in paragraphs 1 through 12 of Count I, and additionally alleges or alleges in the alternative:

**ANSWER:**  CHMI incorporates its responses to Paragraphs 1 through 12 as if those responses were fully set forth in response to Paragraph 19.

20.     When Medicare Part D was initially launched, CMS intended to inform plan sponsors, or PBMs acting on their behalf, whether individuals qualified as institutionalized full subsidy eligible patients on a scheduled basis.  CMS planned to provide this information from its database in which it stores information vital to determinations of subsidy eligibility.  Since the rollout of Part D in 2006, however, CMS has admittedly failed to provide and update this eligibility information on a consistent basis.

**ANSWER:** CHMI lacks sufficient information or knowledge to form a belief as to the truth of

the allegations set forth in Paragraph 20 and, accordingly, denies them.

21.    CMS recognized this problem shortly after the rollout of Part D and issued a memorandum directing Part D Plans, or PBMs acting on their behalf, to obtain the necessary information from nursing facilities or advocates acting on behalf of beneficiaries to ascertain their eligibility status so as to correct this improper co-pay assessment.  This information, which must be submitted by Part D Plans in order to receive reimbursement from Part D, is called Best Available Data or Best Available Evidence (hereinafter, "BAE").  Specifically, in a May 5, 2006 memorandum, CMS stated that when a Part D Plan has knowledge that "a beneficiary is a full benefit dual eligible, the plan should make changes to its systems to accommodate the revised copayment level."  In several other communications in 2006 and 2007, CMS instructed Part D Plans, or PBMs acting on their behalf; to work out arrangements for collecting BAE in order to stem the tide of improper adjudications of claims for institutionalized full subsidy eligible individuals.

**ANSWER:** CHMI denies the allegations set forth in the first, second and fourth sentences of

Paragraph 21.  With respect to the third sentence of Paragraph 21, CHMI admits that a CMS

document dated May 5, 2006 contains the quoted language; however, CHMI specifically denies

that the May 5, 2006 document or the quoted language creates or imposes any obligation, duty,

liability or requirement on Defendants with respect to Omnicare.  CHMI denies each and every

remaining allegation set forth in Paragraph 21.

22.    WHI, and United and Comprehensive, through WHI, their agent, have obligations under the Omnicare contract to abide by CMS guidance.  However, they have failed to follow CMS instructions to collect BAE in order to update and correct data about members of their plans.  Their delinquency has exacerbated the flaws in the adjudication process.  Nonetheless they persist in relying upon incomplete or outdated data from CMS.  Consequently, as discussed in Count I, WHI has misadjudicated claims for drugs dispensed to institutionalized full subsidy eligible beneficiaries.

**ANSWER:** Denied.

23.    WHI, United, and Comprehensive have breached their contract with Omnicare by refusing to collect, update and/or maintain their member data, as required by CMS, in order to provide for the correct adjudication of claims for institutionalized full subsidy eligible beneficiaries.

**ANSWER:** Denied.

24.    Their breaches are ongoing.

**ANSWER:**  Denied.

25.     As a result of WHI's, United's, and Comprehensive's failures to follow CMS guidance in regard to maintaining accurate member data, for the period January 1, 2006, through May 24, 2008, WHI, United, and Comprehensive owe Omnicare an amount in excess of $1,643,131.21.

**ANSWER:**  Denied.

26.     Omnicare has performed all of the terms of the Agreement to be performed by it and all conditions precedent to WHI's, United's, and Comprehensive's obligations to follow CMS guidance for the maintenance of member data.

**ANSWER:**  Denied.

27.     WHI's, United's and Comprehensive's breaches of the Agreement have caused Omnicare injury and damages in an amount in excess of $1,643,131.21.

**ANSWER:**  Denied.

## <u>COUNT III</u>
**(Breach of Contract To Reimburse Against WHI)**

28.     Omnicare realleges and incorporates in this Count III each of the allegations contained in paragraphs 1 through 7 and 10 through 12 of Count I, and additionally alleges:

**ANSWER:**  CHMI incorporates its responses to Paragraphs 1 through 7 and 10 through 12 as if

those responses were fully set forth in response to Paragraph 28.

29.     Part D places certain restrictions on choice and administration of prescription drugs.  These restrictions were designed foremost to apply in the retail drug context (i.e. where an individual fills his or her own prescription at a retail pharmacy).  However, a portion of Part D beneficiaries are confined to nursing homes or other types of LTC facilities.  Residents of LTC facilities do not fill their prescriptions at retail pharmacies.  Instead, their prescriptions are ordered on their behalf by the facilities in which they reside and filled by an institutional pharmacy such as Omnicare.

**ANSWER:**  The allegations set forth in Paragraph 29 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

30.     Part D beneficiaries residing in LTC facilities thus present special challenges to Part D Plans and institutional pharmacies in their administration of Part D.  For example, the Part D program places limitations on the frequency with which an enrollee's prescriptions can be refilled.  However, when individuals are first admitted to a nursing home, they are generally not permitted to bring any of their prescription drugs with them from home.  Because individuals can

be admitted to a nursing home at any point in their prescription cycle, the pharmacies servicing nursing homes may need to fill a newly admitted patient's prescriptions immediately, regardless of whether three days or twenty-five days have passed since the patient's prescription was last filled. The alternative would be for a patient to go unmedicated for days or even weeks. Another example is when, for a transitional period, LTC pharmacies are given an order for a drug not covered by the formulary set by a specific Part D plan. In some instances this occurs because upon admission to a LTC facility, individuals may enroll in a new Part D Plan that has drug formularies that are different from the individuals' previous plans. In other instances, individuals enrolled in a Part D Plan may have been prescribed non-formulary drugs during a hospital stay, but upon discharge from a hospital and re-admission to the LTC facility must revert to their Part D Plan's formularies. Patients in these situations are often on a number of different medications. LTC pharmacies thus may be asked to dispense non-covered drugs while new formularies are phased in over a period of months in order to protect patients from the physical shock of switching several drugs at once.

**ANSWER:** The allegations set forth in Paragraph 30 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

31. Prior to the implementation of Part D, CMS emphasized the "unique needs of residents of long term care facilities who enroll in a new Part D Plan." Because such residents are "likely to be receiving multiple medications for which simultaneous changes could significantly impact the condition of the enrollee," CMS encouraged Part D Plans to shape appropriate policies for transitional prescription drug coverage, calling transition periods of 90 to 180 days "appropriate." (*See* Information for Part D Sponsors on Requirements for a Transition Process dated March 16, 2005, attached hereto as Exhibit 2.)

**ANSWER:** The allegations set forth in Paragraph 31 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

32. After Part D's inception, CMS has continued to recognize that LTC pharmacies frequently face situations where what is best for their patients does not necessarily follow standard Part D protocols. Rather than putting LTC pharmacies in the position of choosing between harming patients and not getting paid, CMS has given its approval to Part D Plans reimbursing LTC pharmacies for drugs they dispense in these unique circumstances despite their variance from the Part D protocols established for retail pharmacies.

**ANSWER:** The allegations set forth in Paragraph 32 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

33. In its Question & Answer Clarification dated May 23, 2006, CMS sanctioned differential treatment between "ambulatory" patients and those confined to LTC facilities when "it is appropriate or legally required under our Part D guidance...For example, it is perfectly acceptable for plans to adopt alternative standards applicable only in the LTC setting when clinically justified, legally required, or otherwise justified based on characteristics unique to

beneficiaries residing in LTC facilities...." (*See* CMS Q&A of May 23, 2006, attached hereto as Exhibit 3, emphasis added.)

**ANSWER:** The allegations set forth in Paragraph 33 are not directed towards CHMI and, therefore, CHMI is not required to respond to them.

34.    More specifically, CMS has limited the use of early refill edits (rejections of claims based on refilling too early in the prescription cycle). These edits "cannot be used to limit appropriate and necessary access" to Part D benefits. (*See* CMS Q&A of April 6, 2006, attached hereto as Exhibit 4.) CMS provides an example of an inappropriate "too soon" edit: Part D Plans must not deny claims for refills to patients upon admission to or discharge from LTC facilities. (*Id.*)

**ANSWER:** The allegations set forth in Paragraph 34 are not directed towards CHMI and, therefore, CHMI is not required to respond to them.

35.    In its agreement with Omnicare, WHI acknowledged that "certain of the restrictions under the Plans may not be appropriate in the context of Plan Enrollees who are residents of [LTC] Facilities." (*See* Agreement Section 3.8.) Accordingly, WHI guaranteed coverage of certain drugs that might otherwise be denied by Part D Plans. The special circumstances that might require WHI to pay for Omnicare's provision of non-covered drugs, or covered drugs under non-covered circumstances, are described in detail in, *inter alia*, the Agreement's Sections 3.8(c), 3.8(h), and 3.8(i).

**ANSWER:** The allegations set forth in Paragraph 35 are not directed towards CHMI and, therefore, CHMI is not required to respond to them.

36.    In order for WHI to properly adjudicate drugs dispensed under these special circumstances, it agreed to use "commercially reasonable efforts to adjudicate Claims submitted by Omnicare Pharmacies using its On-Line System" in a way consistent with its guarantee of expanded coverage under Section 3.8. (*Id.*) Should a claim covered by Section 3.8 be rejected by WHI's On-Line System, meaning the On-Line System improperly rejected the claim as non-payable, WHI must pay the claim within thirty days of Omnicare's written notice of the improper adjudication. (*Id.*)

**ANSWER:** The allegations set forth in Paragraph 36 are not directed towards CHMI and, therefore, CHMI is not required to respond to them.

37.    During the period of January 1, 2006, through May 16, 2008, Omnicare provided prescription drugs under the special conditions described in Section 3.8 to many of WHI's members. When Omnicare submitted claims for these prescriptions, WHI's On-Line System improperly adjudicated these claims as non-covered and did not reimburse Omnicare for them

(collectively, the "Rejected Claims").  Under the terms of the parties' Agreement, WHI is obligated to pay these claims.

**ANSWER:**  The allegations set forth in Paragraph 37 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

38.     Consistent with Section 3.8 of the Agreement and CMS guidance, Omnicare brought these claims rejected by the On-Line System to WHI's attention and requested payment. WHI did not pay these claims within thirty days, as contractually required, and continues to withhold payment to Omnicare.

**ANSWER:**  The allegations set forth in Paragraph 38 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

39.     On February 14, 2007, Omnicare notified WHI in writing of its demand that WHI reimburse Omnicare in full for Rejected Claims.  To date, WHI has failed and refused to pay Omnicare the amounts owed with respect to these claims.

**ANSWER:**  The allegations set forth in Paragraph 39 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

40.     WHI's failure to pay Omnicare for Rejected Claims constitutes a breach of the Agreement.

**ANSWER:**  The allegations set forth in Paragraph 40 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

41.     WHI's breaches are ongoing.

**ANSWER:**  The allegations set forth in Paragraph 41 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

42.     As a result of WHI' s failure to pay amounts due Omnicare for Rejected Claims, for the period January 1, 2006, through May 24, 2008, WHI owes Omnicare an amount in excess of $431,429.

**ANSWER:**  The allegations set forth in Paragraph 42 are not directed towards CHMI and,

therefore, CHMI is not required to respond to them.

43.     Omnicare has performed all of the terms of the Agreement to be performed by it and all conditions precedent to WHI's obligation to pay Omnicare.

**ANSWER:**  The allegations set forth in Paragraph 43 are not directed towards CHMI and, therefore, CHMI is not required to respond to them.

44.      WHI's breach of the Agreement has caused Omnicare injury and damages in an amount in excess of $431,429.

**ANSWER:**  The allegations set forth in Paragraph 44 are not directed towards CHMI and, therefore, CHMI is not required to respond to them.

**AFFIRMATIVE AND OTHER DEFENSES**

CHMI, without assuming the burden of proof with respect to any issue where the burden would otherwise be placed upon Omnicare, asserts the following defenses to Omnicare's Amended Complaint.  CHMI reserves the right to amend these defenses.

**FIRST DEFENSE**
**(Payment)**

Omnicare's claims are barred, in whole or in part, to the extent it was paid by any party or non-party for the amounts it alleges are due.

**SECOND DEFENSE**
**(Lack of Privity)**

Omnicare's claims for breach of contract against CHMI are barred, in whole or in part, because Omnicare lacks privity of contract with CHMI.

**THIRD DEFENSE**
**(Failure of Consideration)**

Omnicare's claims for breach of contract against CHMI are barred, in whole or in part, because of failure of consideration.

**FOURTH DEFENSE**
**(Statute of Frauds)**

Omnicare's claims are barred, in whole or in part, by the statute of frauds.

### FIFTH DEFENSE
### (Estoppel/Waiver)

Omnicare should be estopped from asserting its claims, and has waived any claims against CHMI, because Omnicare failed to follow applicable statutes, regulations and federal sub-regulatory guidance.

### SIXTH DEFENSE
### (Laches)

Omnicare's claims are barred, in whole or in part, by its delay in asserting them.

### SEVENTH DEFENSE
### (Failure to Abide by Contractual Terms)

Omnicare's claims are barred, in whole or in part, to the extent it failed to comply with the terms of the agreement between Omnicare and WHI, including, but not limited to, Omnicare's obligation to collect cost-sharing amounts from Medicare Part D beneficiaries.

### EIGHTH DEFENSE
### (Failure to Mitigate Damages)

Omnicare is barred from recovering any monetary damages from any Defendant due to its failure to mitigate.

### NINTH DEFENSE
### (Failure of Conditions Precedent)

Omnicare's claims are barred, in whole or in part, because of the failure of conditions precedent under the agreement between Omnicare and WHI, including, but not limited to, the condition precedent that Omnicare is not entitled to payment from WHI until WHI receives funding from Part D Plan Sponsors or other appropriate entities.

<u>**TENTH DEFENSE**</u>
**(Barred by Other Agreement)**

Omnicare's claims are barred, in whole or in part, by the terms of WHI's agreement with

CHMI that, among other things, explicitly provides that WHI is not CHMI's agent.

**JURY DEMAND**

CHMI demands a trial by jury.

Date: July 30, 2008                    Respectfully submitted,

*COMPREHENSIVE HEALTH MANAGEMENT,
INC.*

           /s/ Steven D. Hamilton
One of Its Attorneys

Edwin E. Brooks
Erin K. McAllister
Steven D. Hamilton
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
(t) 312-849-8100

*Attorneys for Comprehensive Health Management,
Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Steven D. Hamilton, an attorney, hereby certify that on July 30, 2008, I caused a copy of the foregoing *Comprehensive Health Management, Inc.'s Answer and Affirmative Defenses to the Amended Complaint* to be filed with the Court's electronic filing system. Parties may access this document through that system. Additionally, I hereby certify that I caused copy of the same to be served First Class U.S. Mail, postage prepaid, at 77 West Wacker Drive, Suite 4100, Chicago, IL 60601, upon the following people:

Harvey Kurzweil
Brian S. McGrath
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019-6092

      /s/ Steven D. Hamilton

\6406700.3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OMNICARE, INC.,           ) | |
|          ) | |
|       Plaintiff,   ) | Case No. 08-CV-3901 |
|          ) | |
| v.          ) | Hon. Matthew F. Kennelly |
|          ) | |
| WALGREENS HEALTH INITIATIVES,  ) | Mag. Judge Geraldine Soat Brown |
| INC., UNITED HEALTHCARE    ) | |
| SERVICES, INC., and COMPREHENSIVE  ) | **JURY TRIAL DEMANDED** |
| HEALTH MANAGEMENT, INC.,   ) | |
|          ) | |
|      Defendants.  ) | |
|          ) | |

**COMPREHENSIVE HEALTH MANAGEMENT, INC.'S NOTIFICATION AS TO
AFFILIATES**

Defendant, Comprehensive Health Management, Inc. ("CHMI"), by its attorneys and

pursuant to Fed. R. Civ. P. 7.1 and Local Rule 3.2, hereby discloses that it is an indirect, wholly-

owned subsidiary of WellCare Health Plans, Inc., which is a publicly-traded company.

Date: July 30, 2008

Respectfully submitted,

*COMPREHENSIVE HEALTH MANAGEMENT,
INC.*

       /s/ Steven D. Hamilton
One of Its Attorneys

Edwin E. Brooks
Erin K. McAllister
Steven D. Hamilton
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
(t) 312-849-8100

*Attorneys for Comprehensive Health Management,
Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Steven D. Hamilton, an attorney, hereby certify that on July 30, 2008, I caused a copy of the foregoing *Comprehensive Health Management, Inc.'s Notification as to Affiliates* to be filed with the Court's electronic filing system. Parties may access this document through that system. Additionally, I hereby certify that I caused copy of the same to be served First Class U.S. Mail, postage prepaid, at 77 West Wacker Drive, Suite 4100, Chicago, IL 60601, upon the following people:

Harvey Kurzweil
Brian S. McGrath
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019-6092

                                  /s/ Steven D. Hamilton

\6454586.1