**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **OMNICARE, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:08-cv-03901 (MFK)** |
| ) | |
| **WALGREENS HEALTH INITIATIVES,** ) | |
| **INC., UNITED HEALTHCARE** ) | |
| **SERVICES, INC., and** ) | |
| **COMPREHENSIVE HEALTH** ) | |
| **MANAGEMENT, INC.** ) | |
| ) | |
| **Defendant.** ) | |

**United Healthcare Services, Inc.'s Answer And Affirmative Defenses
To Omnicare, Inc.'s Amended Complaint**

Defendant United Healthcare Services, Inc. ("United"), by and through its undersigned counsel, hereby responds to the specific numbered paragraphs of the Amended Complaint filed by Plaintiff Omnicare, Inc. ("Omnicare") in the above-captioned matter and provides its Affirmative Defenses below.

## COUNT I

**(Breach of Contract To Pay Withheld Cost-Sharing Amounts Against WHI)**

1.      Plaintiff Omnicare, Inc., ("Omnicare") is a corporation organized and existing under the laws of the state of Delaware, maintaining, at all relevant times, a principal place of business in Covington, Kentucky.  Omnicare provides pharmaceutical products and services to residents of Long Term Care ("LTC") facilities and is reimbursed for its products and services by healthcare insurance companies.

**ANSWER**:      United admits, upon information and belief, the allegations in paragraph 1 of Omnicare's Amended Complaint.

2.      Defendant Walgreens Health Initiatives, Inc. ("WHI") is a corporation organized and existing under the laws of the State of Illinois, maintaining, at all relevant

times, a principal place of business in Deerfield, Lake County, Illinois.  WHI is engaged in business as a healthcare insurance company.  WHI does business in Cook County, Illinois.

**ANSWER**:    United admits, upon information and belief, the allegations in the first and third sentences of paragraph 2 of Omnicare's Amended Complaint.  United lacks sufficient knowledge to form a belief as to the truth of the allegations in the second sentence of paragraph 2, and therefore denies such allegations.

3.      Defendant United Healthcare Services, Inc. ("United") is a corporation organized and existing under the laws of Minnesota, maintaining, at all relevant times, a principal place of business in Minnetonka, Minnesota.  United is engaged in business as a healthcare insurance company.  Upon information and belief, United does business in Cook County, Illinois.

**ANSWER**:    United admits the allegations in the first and third sentences of paragraph 3 of Omnicare's Amended Complaint.  United denies the allegation in the second sentence of paragraph 3.

4.      Defendant Comprehensive Health Management, Inc. ("Comprehensive") is a corporation organized and existing under the laws of Florida, maintaining, at all relevant times, a principal place of business in Tampa, Florida.  Comprehensive is engaged in business as a healthcare insurance company.  Upon information and belief, Comprehensive does business in Cook County, Illinois.

**ANSWER**:    United lacks sufficient knowledge to form a belief as to the truth of the allegations in paragraph 4 of Omnicare's Amended Complaint, and therefore denies such allegations.

5.      The Medicare Prescription Drug Improvement and Modernization Act of 2003 created a new Medicare prescription drug benefit (commonly known as "Part D"), which is administered by the Centers for Medicare and Medicaid Services ("CMS").  Under Part D, private at-risk prescription drug plans ("Part D Plans") function as payors for the prescription drug benefits of patients enrolled in the given Part D Plan.  WHI is a pharmacy benefit manager ("PBM") which processes and pays pharmacy claims on behalf of several Part D Plans.

**ANSWER**:    United admits that the Medicare Prescription Drug Improvement and Modernization Act of 2003 created a new Medicare prescription drug benefit program commonly known as "Medicare Part D," which is regulated by the Centers for Medicare and Medicaid Services ("CMS").   The second sentence of paragraph 5 of Omnicare's Amended Complaint states a legal conclusion to which no response is required; to the extent a response is required, United denies such allegations.   With respect to the third sentence of paragraph 5, United admits that Walgreens Health Initiatives ("WHI") provides pharmaceutical benefit administrative services for Medicare Part D prescription drug plans ("PDPs"), including PDPs sponsored by affiliates of United.   United denies the remaining allegations in paragraph 5

6.    To be approved by CMS, a Part D Plan must meet certain minimum requirements, such as showing it has an adequate network of pharmacies.  Part D Plans, or PBMs acting on their behalf, thus routinely contract with Omnicare to serve as an institutional pharmacy for their members.  Pursuant to these contracts, Omnicare is reimbursed by the PBM or Part D Plan for the pharmacy services it provides to their members.

**ANSWER**:    United admits the allegations in the first sentence of paragraph 6 of Omnicare's Amended Complaint.  United lacks sufficient knowledge to form a belief as to the truth of the allegations in the second and third sentences of paragraph 6 with respect to PDPs or pharmacy benefit managers ("PBMs") other than those PDPs that are sponsored by affiliates of United and PBMs that contract with United, and therefore denies such allegations.   As the second and third sentences relate to United, United admits that Omnicare contracted with WHI and relies upon the terms of that agreement to speak for themselves.  United denies the remaining allegations in paragraph 6.

7.    Each Part D Plan has its own computerized processing system or provides a protocol to its PBM for claims processing.  The Part D Plans program these systems or design their protocols to process claims in a way that is consistent with the breadth of

Part D coverage. Whenever there are changes to Part D coverage or updates from CMS regarding the treatment of certain claims, Part D Plans must update their processing systems or protocols accordingly. These instructions for handling of various classes of claims are sometimes referred to as "edits."

**ANSWER**:    In response to the first two sentences of paragraph 7 of Omnicare's Amended Complaint, United admits that WHI processes claims pursuant to, among other things, specifications provided by PDPs sponsored by affiliates of United, and that PDPs must comply with the Medicare Prescription Drug Improvement and Modernization Act of 2003, as amended, and CMS regulations. United otherwise lacks sufficient knowledge to form a belief as to the truth of the remaining allegations in the first two sentences of paragraph 7, and therefore denies such allegations. The third sentence of paragraph 7 states legal conclusions to which no response is required; to the extent a response is required, United admits that PDPs must comply with the Medicare Prescription Drug Improvement and Modernization Act of 2003, as amended, and CMS regulations, but denies the remaining allegations in the third sentence of paragraph 7. The fourth sentence of paragraph 7 is vague and ambiguous; to the extent a response is required, United denies the allegations in the fourth sentence of paragraph 7.

8.    Many enrollees in Part D Plans are "institutionalized full subsidy eligible individuals" under the CMS regulations for Part D. Primarily nursing home residents, these individuals are enrolled in both a state Medicaid program and Medicare Part D Plan. Their dual enrollment in Medicare and Medicaid exempts them from the "cost-sharing" amounts that would otherwise be payable by beneficiaries under a Part D Plan, such as deductibles, co-payments or coinsurance amounts. Instead, CMS provides cost-sharing subsidies to Part D Plans to cover these amounts.

**ANSWER**:    United lacks sufficient knowledge to form a belief as to the truth of the allegations in the first sentence of paragraph 8 of Omnicare's Amended Complaint, and therefore denies such allegations. United admits that individuals who are covered by both Medicare and a State Medicaid program, who continuously reside in a nursing home

(or another long term care facility qualifying as an "institution"), and as to whom the

State Medicaid program is paying for the stay in the nursing home or other institution

may be exempt from paying cost-sharing amounts that are otherwise applicable under the

Medicare Part D program, beginning the first day of the month following the individual's

admission to the nursing home or other institution.    United denies the remaining

allegations in the second and third sentences of paragraph 8.    United admits that CMS

provides cost-sharing subsidies to PDPs, but lacks information sufficient to form a belief

as to the truth of the remaining allegations in the fourth sentence of paragraph 8, and

therefore denies such allegations.

9.    By law, if a Part D Plan (including any PBM acting on its behalf) specifies that institutionalized full subsidy eligible individuals must pay cost-sharing when it processes their pharmacy claims, it must pay these individuals any cost-sharing that it withheld.  (See 42 C.F.R. 423.800(c).)  Many LTC pharmacies have not collected cost-sharing amounts from institutionalized full subsidy eligible individuals who are residents of nursing homes and other LTC facilities.  Consequently, these LTC pharmacies are left holding receivables for the services they rendered to those individuals.  Recognizing the difficulty of collecting cost-sharing from patients in nursing homes and LTC facilities, CMS has directed Part D Plans to pay the specified cost-sharing amounts they withheld directly to LTC pharmacies that have not collected cost-sharing amounts from such beneficiaries and are holding receivables for those amounts.

**ANSWER**:    The first and the fourth sentences of paragraph 9 of Omnicare's Amended

Complaint state legal conclusions to which no response is required; to the extent a

response is required, United denies such allegations.  United lacks sufficient knowledge

to form a belief as to the truth of the allegations in the second and third sentences of

paragraph 9, and therefore denies such allegations.

10.    On July 29, 2005, Omnicare and WHI entered into a written contract denominated Pharmacy Network Agreement ("Agreement") by which Omnicare agreed to provide pharmaceutical products and services to members of Part D Plans and Plan Sponsors listed in Exhibit A to the Agreement.  United and an affiliate of Comprehensive are among the Part D Plans and Plan Sponsors listed in Exhibit A that contracted with

WHI to process and pay their claims. A copy of the Agreement has been filed under seal with this Court.

**ANSWER**:    In responding to paragraph 10 of Omnicare's Amended Complaint, United admits that WHI and Omnicare entered into a written agreement. United relies on the terms that Agreement to speak for themselves, and United denies Omnicare's incomplete characterization thereof.

11.    In return for the provision of drugs and services, WHI agreed to pay Omnicare for prescription claims approved by WHI at the prices specified on Schedule 3.1(a) to the Agreement, and to perform its obligations under the Agreement in conformance with the Part D Rules, including "CMS instructions, and CMS published sub-regulatory guidance relating to the Part D prescription Drug Benefit. . . " (See Section 3.1(a), Section 5.1, Section 5.3, and the definition of "Part D Rules" in Article 1.)

**ANSWER**:    In responding to paragraph 11 of Omnicare's Amended Complaint, United relies on the terms of the WHI-Omnicare Agreement to speak for themselves, and United denies Omnicare's incomplete characterization thereof.

12.    Thus WHI played two roles in this transaction: PBM and agent. First, as a PBM, WHI is contractually bound to appropriately process claims submitted by Omnicare and remit payment to Omnicare for the claims it approves. Second, as agent for United and Comprehensive (and the other Part D Plans and Plan Sponsors listed in Exhibit A to the contract), WHI entered into a contract on their behalf by which WHI is bound to reimburse Omnicare for the drugs and services that Omnicare agreed to provide to the Part D Plans' members.

**ANSWER**:    The first sentence of paragraph 12 of Omnicare's Amended Complaint states a legal conclusion to which no response is required; to the extent a response is required, United denies such allegations. In responding to the second and third sentences of paragraph 12, United relies on the terms of the WHI-Omnicare Agreement to speak for themselves, and United denies Omnicare's incomplete characterization thereof.

13.    During the period of January 1, 2006, through May 16, 2008, Omnicare provided prescription drugs to institutionalized full subsidy eligible beneficiaries of the Part D Plans covered by the Agreement for which WHI approved the prescription claim but withheld a cost-sharing amount. Omnicare did not collect these cost-sharing amounts

from the beneficiaries or any other source, and currently holds a receivable for these amounts. In accordance with the terms of the Agreement and the applicable Part D Rules, WHI is obliged to pay these withheld cost-sharing amounts to Omnicare, but, despite demand, has failed to make such payments in full.

**ANSWER**:     United admits that Omnicare submitted claims for Medicare Part D beneficiaries after January 1, 2006, and that payment was made to Omnicare based on data provided by CMS. United, upon information and belief, denies the remaining allegations in paragraph 13 of Omnicare's Amended Complaint.

14.     WHI breached the Agreement by failing and refusing to pay Omnicare the withheld cost-sharing amounts.

**ANSWER**:     United denies the allegations in paragraph 14 of Omnicare's Amended Complaint.

15.     WHI's breaches are ongoing.

**ANSWER**:     United denies the allegations in paragraph 15 of Omnicare's Amended Complaint.

16.     As a result of WHI's failure to pay these cost-sharing amounts to Omnicare, for the period January 1, 2006, through May 24, 2008, WHI owes Omnicare an amount in excess of $1,643,131.21.

**ANSWER**:     United denies the allegations in paragraph 16 of Omnicare's Amended Complaint.

17.     Omnicare has performed all of the terms of the Agreement to be performed by its and all conditions precedent to WHI's obligation to pay Omnicare the withheld cost-sharing amounts.

**ANSWER**:     United denies the allegations in paragraph 17 of Omnicare's Amended Complaint.

18.     WHI's breach of the Agreement has caused Omnicare injury and damages in an amount in excess of $1,643,131.21.

**ANSWER**:     United denies the allegations in paragraph 18 of Omnicare's Amended Complaint.

## COUNT II

### (Breach of Contract for Failure
### to Update Cost-Sharing Database Against all Defendants)

19.     Omnicare realleges and incorporates in this Count II each of the allegations contained in paragraphs 1 through 12 of Count I, and additionally alleges or alleges in the alternative.

**ANSWER**:     United repeats its responses to paragraphs 1-12 as if set forth fully herein.

20.     When Medicare Part D was initially launched, CMS intended to inform plan sponsors, or PBMs acting on their behalf, whether individuals qualified as institutionalized full subsidy eligible patients on a scheduled basis. CMS planned to provide this information from its database in which it stores information vital to determinations of subsidy eligibility. Since the rollout of Part D in 2006, however, CMS has admittedly failed to provide and update this eligibility information on a consistent basis.

**ANSWER**:     United lacks information sufficient to form a belief as to the truth of the allegations in the first and second sentences of paragraph 20, and therefore denies such allegations. United denies the allegations in the third sentence of paragraph 20.

21.     CMS recognized this problem shortly after the rollout of Part D and issued a memorandum directing Part D Plans, or PBMs acting on their behalf, to obtain the necessary information from nursing facilities or advocates acting on behalf of beneficiaries to ascertain their eligibility status so as to correct this improper co-pay assessment. This information, which must be submitted by Part D Plans in order to receive reimbursement from part D, is called Best Available Data or Best Available Evidence (hereinafter, "BAE"). Specifically, in a May 5, 2006 memorandum, CMS stated that when a Part D Plan has knowledge that "a beneficiary is a full benefit dual eligible, the plan should make changes to its systems to accommodate the revised copayment level." In several other communications in 2006 and 2007, CMS instructed Part D Plans, or PBMs acting on their behalf, to work out arrangements for collecting BAE in order to stem the tide of improper adjudications of claims for institutionalized full subsidy eligible individuals.

**ANSWER**:    United denies the allegations in the first and second sentences of paragraph 21 of Omnicare's Amended Complaint.  In response to the third sentence of paragraph 21, Omnicare relies on the May 5, 2006 CMS memorandum to speak for itself, and United denies Omnicare's incomplete characterization thereof.  United denies the allegations in the fourth sentence of paragraph 21.

22.    WHI, and United and Comprehensive, through WHI, their agent, have obligations under the Omnicare contract to abide by CMS guidance.  However, they have failed to follow CMS instructions to collect BAE in order to update and correct data about members of their plans.  Their delinquency has exacerbated the flaws in the adjudication process.  Nonetheless they persist in relying upon incomplete or outdated data from CMS.  Consequently, as discussed in Count I, WHI has misadjudicated claims for drugs dispensed to institutionalized full subsidy eligible beneficiaries.

**ANSWER**:    United admits that PDPs that contract with CMS must comply with the Medicare Prescription Drug Improvement and Modernization Act of 2003, as amended, and CMS regulations. United denies the remaining allegations in paragraph 22 of Omnicare's Amended Complaint.

23.    WHI, United, and Comprehensive have breached their contract with Omnicare by refusing to collect, update and/or maintain their member data, as required by CMS, in order to provide for the correct adjudication of claims for institutionalized full subsidy eligible beneficiaries.

**ANSWER**:    United denies the allegations in paragraph 23 of Omnicare's Amended Complaint.

24.    Their breaches are ongoing.

**ANSWER**:    United denies the allegations in paragraph 24 of Omnicare's Amended Complaint.

25.    As a result of WHI's, United's, and Comprehensive's failures to follow CMS guidance in regard to maintaining accurate member data, for the period January 1, 2006, through May 24, 2008, WHI, United, and Comprehensive owe Omnicare an amount in excess of $1,643,131.21.

**ANSWER**:    United denies the allegations in paragraph 25 of Omnicare's Amended

Complaint.

28.    Omnicare has performed all of the terms of the Agreement to be performed by it and all conditions precedent to WHI's, United's, and Comprehensive's obligations to follow CMS guidance for the maintenance of member data.

**ANSWER**:    United denies the allegations in paragraph 26 of Omnicare's Amended

Complaint.

27.    WHI's, United's, and Comprehensive's breaches of the Agreement have caused Omnicare injury and damages in an amount in excess of $1,643,131.21.

**ANSWER**:    United denies the allegations in paragraph 27 of Omnicare's Amended

Complaint.

## COUNT III

### (Breach of Contract to Reimburse WHI)

28.    Omnicare realleges and incorporates in this Count III each of the allegations contained in paragraphs 1 through 7 and 10 through 12 of Count I and additionally alleges.

**ANSWER**:    United repeats its responses to paragraphs 1 through 7 and 10 through 12

as if set forth fully herein.

29.    Part D places certain restrictions on choice and administration of prescription drugs.  These restrictions were designed foremost to apply in the retail drug context (i.e. where an individual fills his or her own prescription at a retail pharmacy). However, a portion of Part D beneficiaries are confined to nursing homes or other types of LTC facilities.  Residents of LTC facilities do not fill their prescriptions at retail pharmacies.  Instead, their prescriptions are ordered on their behalf by the facilities in which they reside and filled by an institutional pharmacy such as Omnicare.

**ANSWER**:    The first two sentences of paragraph 29 of Omnicare's Amended

Complaint are vague and ambiguous; to the extent a response is required, United denies

the allegations in the first two sentences of paragraph 29.  With respect to the third

sentence of paragraph 29, United admits that some Medicare Part D beneficiaries reside

in nursing homes or other institutions, but denies the remaining allegations of such sentence. United lacks sufficient knowledge to form a belief as to the truth of the allegations set forth in the fourth and fifth sentences of paragraph 29, and therefore denies such allegations.

30.    Part D beneficiaries residing in LTC facilities thus present special challenges to Part D Plans and institutional pharmacies in their administration of Part D. For example, the Part D program places limitations on the frequency with which an enrollee's prescriptions can be refilled. However, when individuals are first admitted to a nursing home, they are generally not permitted to bring any of their prescription drugs with them from home. Because individuals can be admitted to a nursing home at any point in their prescription cycle, the pharmacies servicing nursing homes may need to fill a newly admitted patient's prescriptions immediately, regardless of whether three days or twenty-five days have passed since the patient's prescription was last filled. The alternative would be for a patient to go unmedicated for days or even weeks. Another example is when, for a transitional period, LTC pharmacies are given an order for a drug not covered by the formulary set by a specific Part D plan. In some instances this occurs because upon admission to a LTC facility, individuals may enroll in a new Part D Plan that has drug formularies that are different from the individuals' previous plans. In other instances, individuals enrolled in a Part D Plan may have been prescribed non-formulary drugs during a hospital stay, but upon discharge from a hospital and re-admission to the LTC facility must revert to their Part D Plan's formularies. Patients in these situations are often on a number of different medications. LTC pharmacies thus may be asked to dispense non-covered drugs while new formularies are phased in over a period of months in order to protect patients from the physical shock of switching several drugs at once.

**ANSWER**:    The first sentence of paragraph 30 of United's Amended Complaint is vague and ambiguous; to the extent a response is required, United denies the allegations in the first sentence of paragraph 30. The second sentence of paragraph 30 states a legal conclusion to which no response is required; to the extent a response is required, United denies the allegations in the second sentence of paragraph 30. United lacks sufficient knowledge to form a belief as to the truth of the remaining allegations in paragraph 30, and therefore, denies such allegations.

31.    Prior to the implementation of Part D, CMS emphasized the "unique needs of residents of long term care facilities who enroll in a new Part D Plan." Because such residents are "likely to be receiving multiple medications for which simultaneous changes

could significantly impact the condition of the enrollee," CMS encouraged Part D Plans to shape appropriate policies for transitional prescription drug coverage, calling transition periods of 90 to 180 days "appropriate." (See Information for Part D Sponsors on Requirements for a Transition Process dated March 16, 2005, attached hereto as Exhibit 2.)

**ANSWER**:    The CMS memorandum dated March 16, 2005, referenced in paragraph 31

of Omnicare's Amended Complaint (and attached as Exhibit 2 thereto), speaks for itself,

and United denies Omnicare's incomplete characterization thereof. United denies the

remaining allegations in paragraph 31.

32.    After Part D's inception, CMS has continued to recognize that LTC pharmacies frequently face situations where what is best for their patients does not necessarily follow standard Part D protocols. Rather than putting LTC pharmacies in the position of choosing between harming patients and not getting paid, CMS has given its approval to Part D Plans reimbursing LTC pharmacies for drugs they dispense in these unique circumstances despite their variance from the Part D protocols established for retail pharmacies.

**ANSWER**:    Paragraph 32 of Omnicare's Amended Complaint is vague and ambiguous;

to the extent a response is required, United denies the allegations in paragraph 32.

33.    In its Question & Answer Clarification dated May 23, 2006, CMS sanctioned differential treatment between "ambulatory" patients and those confined to LTC facilities when "it is appropriate or legally required under our Part D guidance. . . For example, it is perfectly acceptable for plans to adopt alternative standards applicable only in the LTC setting when clinically justified, legally required, or otherwise justified based on characteristics unique to beneficiaries residing in LTC facilities . . . ." (See CMS Q&A of May 23, 2006, attached hereto as Exhibit 3, emphasis added.)

**ANSWER**:    The CMS Memorandum dated May 23, 2006, referenced in paragraph 20

of Omnicare's Amended Complaint (and attached as Exhibit 3 thereto), speaks for itself

and United denies Omnicare's incomplete characterization thereof. United denies the

remaining allegations in paragraph 33.

34.    More specifically, CMS has limited the use of early refill edits (rejections of claims based on refilling to early in the prescription cycle). These edits "cannot be used to limit appropriate and necessary access" to Part D benefits. (See CMS Q&A of April 6, 2006, attached hereto as Exhibit 4.) CMS provides an example of an

inappropriate "too soon" edit: Part D Plans must not deny claims for refills to patients upon admission to or discharge from LTC facilities. (Id.)

**ANSWER**:    The CMS "Frequently Asked Questions" dated April 10, 2006, referenced

in paragraph 34 of Omnicare's Amended Complaint (and attached as Exhibit 4 thereto),

speaks for itself, and United denies Omnicare's incomplete characterization thereof.

United denies the remaining allegations in paragraph 34.

35.    In its agreement with Omnicare, WHI acknowledged that "certain of the restrictions under the Plans may not be appropriate in the context of Plan Enrollees who are residents of [LTC] Facilities." (See Agreement Section 3.8) Accordingly, WHI guaranteed coverage of certain drugs that might otherwise be denied by Part D Plans. The special circumstances that might require WHI to pay for Omnicare's provision of non-covered drugs, or covered drugs under non-covered circumstances, are described in detail in, *inter alia*, the Agreement's Sections 3.8(c), 3.8(h), and 3.8(i).

**ANSWER**:    In responding to the allegations in paragraph 35 of the Amended

Complaint, United relies on the terms of the WHI-Omnicare Agreement to speak for

themselves, and United denies Omnicare's incomplete characterization thereof.

36.    In Order for WHI to properly adjudicate drugs dispensed under these special circumstances, it agreed to use "commercially reasonable efforts to adjudicate Claims submitted by Omnicare Pharmacies using its On-Line System" in a way consistent with its guarantee of expanded coverage under Section 3.8. (Id.) Should a claim covered by Section 3.8 be rejected by WHI's On-Line System, meaning the On-Line System improperly rejected the claim as non-payable, WHI must pay the claim within thirty days of Omnicare's written notice of the improper adjudication. (Id.)

**ANSWER**:    In responding to the allegations in paragraph 36 of the Amended

Complaint, United relies on the terms of the WHI-Omnicare Agreement to speak for

themselves, and United denies Omnicare's incomplete characterization thereof.

37.    During the period of January 1, 2006, through May 16, 2008, Omnicare provided prescription drugs under the special conditions described in Section 3.8 to many of WHI's members. When Omnicare submitted claims for these prescriptions, WHI's On-Line System improperly adjudicated these claims as non-covered and did not reimburse Omnicare for them (collectively, the "Rejected Claims"). Under the terms of the parties' Agreement, WHI is obligated to pay these claims.

**ANSWER**:    United admits that Omnicare submitted claims for Medicare Part D beneficiaries after January 1, 2006, but denies the remaining allegations in the first sentence of paragraph 37 of Omnicare's Amended Complaint. The second and third sentences of paragraph 37 state legal conclusions to which no response is required; to the extent a response is required, United denies the allegations in the second and third sentence of paragraph 37.

38.    Consistent with Section 3.8 of the Agreement and CMS guidance, Omnicare brought these claims rejected by the On-Line System to WHI's attention and requested payment. WHI did not pay these claims within thirty days, as contractually required, and continues to withhold payment to Omnicare.

**ANSWER**:    In responding to paragraph 38 of Omnicare's Amended Complaint, United admits that Omnicare sought reimbursement for certain claims that the Amended Complaint refers to as "Rejected Claims," but denies that Omnicare is entitled to any reimbursement for such claims. United denies the remaining allegations in paragraph 38.

39.    On February 14, 2007, Omnicare notified WHI in writing of its demand that WHI reimburse Omnicare in full for Rejected Claims. To date, WHI has failed and refused to pay Omnicare the amounts owed with respect to these claims.

**ANSWER**:    In responding to paragraph 39 of the Amended Complaint, United relies on the terms of the February 14, 2007 correspondence to speak for themselves and United denies Omnicare's incomplete characterization thereof. United denies the remaining allegations in paragraph 39.

40.    WHI's failure to pay Omnicare for Rejected Claims constitutes a breach of the Agreement.

**ANSWER**:    United denies the allegation in paragraph 40 of Omnicare's Amended Complaint.

41.    WHI's breaches are ongoing.

**ANSWER**:     United denies the allegation in paragraph 41 of Omnicare's Amended Complaint.

42.     As a result of WHI's failure to pay amounts due Omnicare for Rejected Claims, for the period January 1, 2006, through May 24, 2008, WHI owes Omnicare an amount in excess of $431,429.

**ANSWER**:     United denies the allegation in paragraph 42 of Omnicare's Amended Complaint.

43.     Omnicare has performed all of the terms of the Agreement to be performed by it and all conditions precedent to WHI's obligations to pay Omnicare.

**ANSWER**:     United denies the allegation in paragraph 43 of Omnicare's Amended Complaint.

44.     WHI's breach of the Agreement has caused Omnicare injury and damages in an amount in excess of $431,429.

**ANSWER**:     United denies the allegation in paragraph 44 of Omnicare's Amended Complaint.

## PRAYER

United denies that Omnicare is entitled to any relief in this action.

In further responding to the allegations in Omnicare's Amended Complaint, United denies each and every allegation not affirmatively admitted or otherwise responded to herein.

## FIRST AFFIRMATIVE DEFENSE

1.     Section 2.3(b) of the WHI-Omnicare Agreement details the form, format, and timing within which Omnicare must submit claims for prescription drug services. Specifically, Section 2.3(b) provides, in pertinent part, that:

> If the individual is verified as an Enrollee, the Omnicare Pharmacy shall attempt to submit a Claim for the drug or other item via the On-Line

System. In the event that the Claim cannot be transmitted via the On-Line System, the Omnicare Pharmacy may submit the Claim to [WHI] via magnetic tape, X12 or NCPDP universal claims form.

2.      Section 1 of the WHI-Omnicare Agreement provides that "'Claim' means a request from an Omnicare Pharmacy for payment for providing a drug or other item and related services to an Enrollee. Each Claim submitted will include the National Drug Code number (if any) for the applicable drug or other item dispensed, the DAW code, and such other information as is required to complete the required fields pursuant to the On-Line System, X12, or the NCPDP universal claim form in accordance with the Part D rules."

3.      Upon information and belief, Omnicare failed and/or refused to submit claims for prescription drug services to WHI and United in the form and/or format required by the terms of its agreement with WHI.

4.      Further, notwithstanding the opportunity Omnicare had to submit claims for prescription drug services under an alternative claims submission process that United developed for Omnicare's benefit in consultation with Omnicare as well as with Omnicare's representative, the Long Term Care Pharmacy Alliance, Omnicare failed and/or refused to submit claims under the alternative claims submission process.

5.      Upon information and belief, the claims set forth in Omnicare's Amended Complaint are barred by Omnicare's failure to mitigate damages and/or the doctrine of avoidable consequences.

## SECOND AFFIRMATIVE DEFENSE

6.      United incorporates by reference and realleges the allegations set forth in paragraphs 1-4 of its Affirmative Defenses.

7.     Upon information and belief, Omnicare failed to comply with contractually required procedures for submitting claims for the prescription drug claims at issue in Omnicare's Amended Complaint.

### THIRD AFFIRMATIVE DEFENSE

8.     United incorporates by reference and realleges the allegations set forth in paragraphs 1-4 of its Affirmative Defenses.

9.     Section 2.3(b) of the WHI-Omnicare Agreement details the time frames within which Omnicare must submit claims for prescription drug services.  Specifically, Section 2.3(b) provides, in pertinent part, that:

> Original Claims must be submitted within ninety (90) days of the date of service, and any re-submissions of Claims denied by [WHI] upon original submission must occur within one hundred eighty (180) days of the date of service.  Notwithstanding the foregoing, with respect to any Enrollee who is or may become eligible for low-income subsidies [under Medicare Part D], if the cost-sharing amount payable by such Enrollee with respect to a prescription would be subject to a reduction on a retroactive basis under the Part D Rules after such Enrollee is determined to be eligible for such low-income subsidy (or would be subject to reduction on the basis that the Enrollee is determined to be eligible for a higher level of cost-sharing subsidy), then an Omnicare Pharmacy may, but shall have no obligation to, take either of the following actions with respect to the Claim for such prescription:  (i) delay the submission of the Claim for such prescription until any time up to and including ninety (90) days after the Omnicare Pharmacy is notified of such eligibility determination; or (ii) submit the Claim for such prescription but refrain from collecting from the Enrollee the cost-sharing amount which would apply prior to such determination of eligibility for the given low-income subsidy, then submit a supplemental Claim for any portion of such cost-sharing for which the [PDP] is liable after the Enrollee is determined to be eligible for the given low-income subsidy, which supplemental Claim may be submitted at any time up to and including ninety (90) days after the Omnicare Pharmacy is notified of such eligibility determination.

10.     Upon information and belief, Omnicare submitted claims for the prescription drug claims at issue in its Amended Complaint outside of the contractually required timeframes specified by the WHI-Omnicare Agreement.

**FOURTH AFFIRMATIVE DEFENSE**

11.     United incorporates by reference and realleges the allegations set forth in paragraphs 1-4 of its Affirmative Defenses.

12.     Upon information and belief, Omnicare fails to state a claim for which relief can be granted because United has no obligation under contract or law to pay Omnicare the amounts at issue in its Amended Complaint.

**FIFTH AFFIRMATIVE DEFENSE**

12.     United incorporates by reference and realleges the allegations set forth in paragraphs 1-4 of its Affirmative Defenses.

13.     CMS is the ultimate payer of benefits, including low-income subsidies, under the Medicare Part D program.

14.     In conjunction with the States, CMS determines whether a Medicare Part D beneficiary qualifies for a low-income subsidy, and, if so, what cost-sharing (if any) that individual is required to pay.

15.     CMS determines in what circumstances the CMS data relating to low-income status eligibility can be changed by a PDP and when its data does not reflect the beneficiary's actual low-income subsidy status.

16.     Upon information and belief, Omnicare failed to join CMS, an indispensable party, in this lawsuit.

## SIXTH AFFIRMATIVE DEFENSE

17.     Omnicare's claims are barred, in whole or in part, by the doctrines of estoppel and/or res judicata.


Dated:  July 30, 2008                    Respectfully submitted,


                                         /s/  Kellye L. Fabian
                                         Kellye L. Fabian
                                         Freeborn & Peters, LLP
                                         311 South Wacker Drive
                                         Suite 3000
                                         Chicago, IL 60606
                                         Telephone: 312.360.6417
                                         Facsimile: 312.360.6996
                                         Email: kfabian@freebornpeters.com

                                         **Attorney for United Healthcare Services, Inc.**

## CERTIFICATE OF SERVICE

I, the undersigned, one of the attorneys United Healthcare Services, Inc. ("United"), hereby certify that on July 30, 2008, I caused a true and complete copy of the foregoing Answer to be served via electronic filing on the following:

Richard P. Campbell
Jenner & Block LLP
330 North Wabash Avenue
Chicago, IL 60611
Tel:  312.923.2818
Fax:  312.923.2918
rcampbell@jenner.com

Harvey Kurzweil
Brian S. McGrath
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel.: 212-259-8000
Fax: 212-259-6333
hkurzweil@dl.com
bmcgrath@dl.com

Edwin E. Brooks
McGuire Woods LLP
77 W. Waker Drive, Suite 4100
Chicago, IL 60601
Tel:  312.849.3060
Fax:  312.920.3681
ebrooks@mcguirewoods.com

Scott W. Fowkes
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Tel:  312.861.2000
Fax:  312.861.2200
sfowkes@kirkland.com

/s/  Kellye L. Fabian

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| OMNICARE, INC.,                ) | |
|              ) | |
|       **Plaintiff,**    ) | |
|              ) | |
|    **v.**            ) | **Case No. 1:08-cv-03901 (MFK)** |
|              ) | |
| **WALGREENS HEALTH INITIATIVES,** ) | |
| **INC., UNITED HEALTHCARE**   ) | |
| **SERVICES, INC., and**       ) | |
| **COMPREHENSIVE HEALTH**   ) | |
| **MANAGEMENT, INC.**       ) | |
|              ) | |
|      **Defendant.**   ) | |
|              ) | |

**DEFENDANT UNITED HEALTHCARE SERVICES, INC.'S**
**NOTIFICATION AS TO AFFILIATES**

Pursuant to Federal Rule of Civil Procedure 7.1 and Northern District of Illinois Local

Rule 3.2, Defendant United Healthcare Services, Inc., hereby discloses that it is a subsidiary of

UnitedHealth Group Incorporated, a publicly traded company.

Dated:  July 30, 2008        Respectfully submitted,


                  /s/  Kellye L. Fabian
                  Kellye L. Fabian
                  Freeborn & Peters, LLP
                  311 South Wacker Drive
                  Suite 3000
                  Chicago, IL 60606
                  Telephone: 312.360.6417
                  Facsimile: 312.360.6996
                  Email: kfabian@freebornpeters.com

                  **Attorney for United Healthcare Services, Inc.**

## CERTIFICATE OF SERVICE

I, the undersigned, one of the attorneys United Healthcare Services, Inc. ("United"), hereby certify that on July 30, 2008, I caused a true and complete copy of the foregoing Notification as to Affiliates to be served via electronic filing on the following:

Richard P. Campbell
Jenner & Block LLP
330 North Wabash Avenue
Chicago, IL 60611
Tel:  312.923.2818
Fax:  312.923.2918
rcampbell@jenner.com

Harvey Kurzweil
Brian S. McGrath
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel.: 212-259-8000
Fax: 212-259-6333
hkurzweil@dl.com
bmcgrath@dl.com

Edwin E. Brooks
McGuire Woods LLP
77 W. Waker Drive, Suite 4100
Chicago, IL 60601
Tel:  312.849.3060
Fax:  312.920.3681
ebrooks@mcguirewoods.com

Scott W. Fowkes
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Tel:  312.861.2000
Fax:  312.861.2200
sfowkes@kirkland.com

/s/  Kellye L. Fabian

1596506v1/26057-0001